Honorary Justices Council, May it please the Court, my name is Randy Schmitz and I'm here on behalf of the Appellant Moshe Immerman. Let me first say that this is my first time arguing for the Ninth Circuit and it is an honor to be here today. The overriding issue presented on this appeal is whether or not the Ninth Circuit will join with the Tenth Circuit and other circuits in holding that a pro se IFP plaintiff may rely upon the court officers to issue process and properly affect service on a defendant automatically upon the granting of IFP status. Now, the Ninth Circuit in Hewitt v. Blanford back in 1990 originally held that an incarcerated pro se IFP plaintiff may rely upon the court officers, the U.S. Marshal, to properly affect service upon furnishing of necessary identifying information, and that the Marshal's for a second exactly what it means when you say the responsibility belongs to the U.S. Marshals. Certainly, the Marshals have responsibility for effecting service. Okay. But they don't have any way of knowing upon whom service is supposed to be effected unless somebody tells them, because they're just an agent of the court that goes out and does something ministerially. That's absolutely correct, Your Honor. Okay. So then we look to what, in this case, what Mr. Emmerman was told and what presumably in any case would happen. That is, the district court approves the IFP application and the district court orders the Marshal's service to effect service, and it tells the plaintiff, tell the Marshals who to serve, and fill out the form, whatever the number is, the U.S. Marshal's form. Here, the form says or allows an opportunity to indicate service on the United States, and that wasn't check. So my question, I guess, is how is the Marshal's service supposed to divine whom the plaintiff wants and needs to serve? Well, that actually raises two points. And the first one is that, in this case, the court itself, the court clerk, should have originally provided that information. Well, I don't understand why, because the clerk also is just and is a ministerial arm of the court. They're not a legal they don't have, you know, some kind of legal insight into a case. All they know is that it's Emmerman v. the Department of Agriculture. They don't know diddly-squat about the substantive nature of the complaint, whether you're proceeding against these people in an individual or an official capacity, whether you need to serve the United States or not. Okay. Well, if that's the case, then at least the court could have requested Emmerman to provide this information, and that didn't happen either. Well, the court directed Emmerman to Rule 4, and the form says, check for service on U.S.A., and there's no checkmark. So I don't know what else and also Mr. Emmerman, unlike a lot of, I feel like I'm in a dentist's office, there's, there's, lost my train of thought. The court directed Emmerman to Rule 4. The form says, check for service on the U.S.A. And unlike an incarcerated IFP, Mr. Emmerman could have gone to the clerk's office and said what gives or what am I supposed to do. Well, here's the thing, Your Honor, is the court didn't ask for him to fill out the forms until January 3rd, well after he was granted IFP status. So, and when he did fill out the forms, the defendant is listed as the U.S. Department of Agriculture. And if you look on the back of these U.S. Marshal forms, it says itself that if the U.S. is a defendant, it will serve a copy on the U.S. attorney and the attorney general. If it has three copies to serve, which it didn't. Well, I mean, again, how much responsibility are we supposed to put on a ministerial agent, which is the U.S. Marshal, who is, has got no legal capacity. They don't have a lawyer there that they take this thing to and say, hey, who am I supposed to serve? Well, but they did know enough to serve the individual agency. Sure, because they're listed on the form. Exactly. And so is the U.S. Department of Agriculture. It is listed on the form at the defendant. The fact that the little box isn't checked, you know, I don't know if that means as much as the fact that the defendant itself is listed as the U.S. government. And in that situation, the U.S. Marshal knows, according to its own form, that it's the U.S. government that's supposed to serve these copies upon the U.S. attorney and the attorney general. And the other thing that I would say about this is that Judge Hogan, in his order, said that Emmerman couldn't rely upon Section 1915d any longer because he had received this January 3rd letter, asked to fill out these forms and send them back to the court. That's what the letter asks him to do. It doesn't say provide a number of copies, send it to the U.S. Marshal or anything like that. It says fill out the form and return it to the court, which he did. And then he did that within 28 days, I believe it was, by the end of January. The Marshal does begin serving the individual agency officers by March, so within 90 days. And then the government files its motion to dismiss. And Judge Hogan says, well, you can't rely upon your argument that the government is supposed to do their job properly or the court and the U.S. Marshal is supposed to do their job properly because 175 days have now passed since this letter. But at the time, the 120 days hadn't even expired yet. And the Marshal was beginning the service process up at the time the motion to dismiss was filed. It just simply didn't complete the service. So the other area where we're saying Judge Hogan committed an abuse of discretion, even if the court decides that there wasn't good cause, is he didn't consider whether or not there was a non-good-cause reason. Kagan. Let me ask you this. Did — was there ever a request for him to do that? Yes. In the — Emmerman had a motion for reconsideration, I believe it was, where he had asked for the court under Rule 4M — actually, it was in the motion to — in response to the motion to dismiss. He asked for an extension of time under Rule 4M, and that wasn't granted. And the other thing — I know I'm down to two-and-a-half minutes, and I'd like to save some time here. But the other thing that Hogan did not do in this case was even give him a hearing. In all the cases that I've read in these situations, IFP plaintiffs are given several steps, several warnings, they're given instructions. The court sort of tries to help them out to understand this process. Hogan never had one single hearing, never gave him one instruction, sent one letter, says, fill out these forms. That's it. Your case is dismissed. So thank you. We'll get back to you after hearing from Ms. Essman. Kelley's who's been appearing on behalf of the United States counsel. Judge Hogan didn't dismiss this case until over 400 days after it was filed. Well, yeah, but he did it. He just up and did it. I mean, you know, there was no warning, no prior instructions, no consideration apparently to just giving another instruction in a little extra time to finish the process. Isn't that a real difficulty for you? There were a number of instructions in this case. When Judge Hogan granted IFP approximately one month after the complaint was filed, he specifically referred Mr. Emmerman to Rule 4i. This is a case against the United States. I see that it's a Title VII case. And he specifically told him, look, when you're serving the United States, there are special rules, so take a look at 4i. The next notice we have is from the clerk's office, and that's the January 3, 2005 letter. I would note a correction in our brief. At page 5 of our brief, we cited you to a page in the ER for that clerk's letter. It's not there. The letter, though, was provided in the addendum at page 5 to Mr. Emmerman's opening brief. So I wanted to be sure you knew where to find it. Now, in that letter, the clerk's office did three things. First, they noted that IFP had been granted. Second, they noted that in order to complete service, you must complete this United States Marshal Service form. And they said, if you have any questions, call. And there's no evidence that Mr. Emmerman ever contacted the clerk's office after receiving that letter. What he did was he filled out three forms, one for the Department of the Secretary of Agriculture, who was named in the complaint, and two for two other individuals who were not named in the complaint. Now, I was somewhat confused by why he was asking for service on the other two individuals when they weren't named. Included in the record is an amended complaint that names those two other individuals, and that's at ER 228. However, if you look at the clerk's record, that amended complaint was never filed or docketed. The Marshal Service, though, did what Mr. Emmerman told them to do. It served the copy of the complaint and the summons on those two individuals, even though they're not in the complaint. And as this Court has recognized, and as someone who has represented the United States Marshals in other contexts, they have a number of different jobs that they do. Their resources are taxed to the extreme. One thing that the Marshals are not are lawyers. And I don't think anyone would expect that when someone fills out that service request form, the Marshal Service is then going to go pull the file, look at the complaint, divine that this is, in fact, someone who has been named in their official capacity, and so, therefore, they should somehow know that they also have to serve the United States Attorney and the Attorney General. Another key piece of advice to Mr. Emmerman came with those forms. And I would direct the Court to ER-52. ER-52 is the explanation. It's the instructions that went with those Marshals' forms. And it says, and it's not a very lengthy instruction sheet, on the third full paragraph it reads, Submit three additional copies of the Writs for Service upon the Government of the United States. The U.S. Marshal will serve one upon the U.S. Attorney and will forward two to the Attorney General of the United States when the applicable box is checked. And if you take a look at each of those Marshal Service forms for each of the three that he wanted served, that's at ER-53, 51, and 62, every single one of those forms, Mr. Emmerman didn't check the box.  He basically, I think, gave Mr. Emmerman the benefit of the doubt for those first 11 months. But after the clerk sent that letter, we're now at 175 days past the time that that letter was sent, and Mr. Emmerman still hasn't taken the steps to notify the Marshals that they need to serve the U.S. Attorney or the Attorney General. Given the totality of the circumstances, Judge Hogan did not abuse his discretion when he dismissed this case without prejudice. There was, in fact, no request for him to consider anything else. Mr. Emmerman's position when he objected to our motion to dismiss was, it's not my responsibility. Court, once you granted IFP, I was done. And so, therefore, there was no question. Roberts, did he ever appear in front of Judge Hogan? I'm sorry? Did he ever appear in front of Judge Hogan? No, I don't believe so. I don't believe there ever was a hearing. So this was just all by mail? Yes. And nor was there ever a request for a hearing. Right. You know, I read this, the instructions for service of process by U.S. Marshal, it starts out, it looks like it relates to service of a writ of execution. Let's see. It never says in there, summons and complaint. I believe if you're looking at ER 52, it's the back side. Yeah, that's what I'm looking at. It says here, pre-print, legibly, submit one complete set of this form, USM 285, and one copy of each writ for each individual company corporation to be served. It's true. It does say writ as opposed to complaint. Again, I don't think there was any question that it applied to what Mr. Emmerman was attempting to do here. It's the back side of the form that he filled out. And again, he never raised a question about that. He never argued that he was confused about writ versus complaint. If he was, that's certainly something that could have been clarified. But beyond that, I think that what we have here is Judge Hogan basically gave Mr. Emmerman what comes to close to 400 days to accomplish what the rule requires be done in 120 days. It wasn't an awfully, you know, that seems like awfully technical. And only not just to drop off a summons and complaint to your office and to mail one to the United States Attorney General back in DC. And Your Honor, I can't disagree with that. My goodness. It is technical. You apparently got a copy of the summons and complaint. We did 11 months after the complaint was filed. What I would point out to the court, though, is that the Supreme Court in McNeil has said that sometimes there are harsh results, but the rules apply to everyone, regardless of whether or not they have an attorney. They apply here. Statute of limitations are very harsh results. Someone misses the deadline. This is not quite a statute of limitations. No. And I'm not saying it is. Judge Hogan absolutely had the discretion. Rule 4M is even written so that even once you miss the 120 days, the court has the authority to extend the time. You know, a lot of times when you have rules, the court, you have to invoke your right to extend that before the time expires. And here under Rule 4M, the 120 days can expire, and you can still get additional time to serve. Absolutely. And Mr. Emmerman had an abundance of time here. You know, he had over 260 days before he got the letter. He had an additional 170 days after that. And frankly, Your Honor, I think if Mr. Emmerman had come to Judge Hogan and said, you know what, you're right, I was confused. You know, I should have told the marshals to serve the U.S. attorney and the attorney general, this might be a different case. But Mr. Emmerman was going to serve the U.S. attorney and the attorney general. Didn't he try to say that in his motion for reconsideration? I don't believe so. What he said and what he held to was that this was the marshals' fault, that this was up to the marshals to figure out who to serve, I did what I was supposed to do, I don't have to do anything further. And given that circumstance, I think Judge Hogan was entirely within his discretion in ordering the dismissal of this complaint. Unless there are any further questions, Your Honors, I will submit. Thank you. Mr. Schmidt. Your Honor, I think that we need to consider the fact that Emmerman was never given the opportunity to go in front of Judge Hogan and tell him these things. What he was is a pro se IFP plaintiff. He was granted an order to proceed IFP. That order said that the clerk shall issue process and that the U.S. marshal shall serve the summons and complaint. And then it refers him to Rule 4, I, A, and B, which says that whoever's serving it needs to serve it also on the U.S. attorney general and the local U.S. attorney. That doesn't tell him that he needs to do anything else. To him, he sees the order and it says they're going to do it for him. That's what he was relying upon when he got the letter. And also there's affidavit in the record where he says he asked the clerk, is there anything else I need to do? And he was told, no, they're going to take care of it for him. He's relying upon them reasonably as a pro se plaintiff. He gets the letter. He fills it out to the best he can.  If he could have gotten in front of Judge Hogan, sure, he could have explained to him, hey, I've misunderstood how to do this. But he was never given that opportunity. Judge Hogan abused his discretion by simply dismissing the complaint without even considering any of these other options, not to mention the fact that we believe it was the U.S. marshal and the court clerk's responsibility automatically upon an IFP, a grant with the IFP status, to perform these duties on his behalf. Thank you. Thank you. Thank you, counsel. The matter just argued will be submitted in next year. Argument in Klamath Tribes.
judges: Rymer, T.G. Nelson, Paez